## PHELPS v. COMMISSIONER OF INTERNAL REVENUE (two cases).

## NORTHERN TRUST CO. v. SAME.

### Nos. 4529–4531.

Circuit Court of Appeals, Seventh Circuit.

Dec. 4, 1931.

Herbert Pope, Edwin J. Mosser, and Benjamin M. Price, all of Chicago, Ill., and E. Barrett Prettyman, of Washington, D. C., for petitioners.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, A. H. Conner, and F. Edward Mitchell, Sp. Asst. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and James K. Polk, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before ALSCHULER and SPARKS, Circuit Judges, and WOODWARD, District Judge.

SPARKS, Circuit Judge (after stating the facts as above).

There being no controversy over the facts, the sole question presented is whether the amounts received by petitioners should be considered, for the purposes of taxation, as dividends under section 201, Revenue Act of 1921, c. 136, 42 Stat. 227, 228, as claimed by respondent, or as gains derived from sales of property under section 202 of the same statute (42 Stat. 229), as claimed by petitioners. So much of those sections as are pertinent are set forth in the margin.[2]

If, under the facts stated, we are bound by the plain meaning of the language employed in the resolution referred to in the statement of facts, then of course the transactions in controversy should be considered as sales, for that is what the resolution termed them, and pursuant thereto there was an exchange of stock for money. But in all relations of life it oftentimes happens that the thing done speaks so audibly that equity is prevented from hearing the language of the parties, and will classify the act by its real name rather than by the name which the interested parties have given it. In such instances the substance of the transaction will control the form, and the Board therefore was warranted in considering both form and substance in arriving at its conclusion. United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; United States v. Klausner (C. C. A.) 25 F.(2d) 608.

That taxing statutes cannot be intentionally circumvented by anticipatory arrangements and contracts is settled by the principle laid down in Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731. It is obvious that if the stockholders of the W. L. Phelps Company intended to, and in fact did, liquidate wholly or partially by distributing its assets to its stockholders and taking up their stock, the earnings and profits so received by them would be governed by section 201, supra. In liquidation of corporations it is quite proper and usual to take up the certificates of stock upon making the final distribution of assets. Such a transaction, however, is not

[2] "Sec. 201. (a) That the term 'dividend' when used in this title * * * means any distribution made by a corporation to its shareholders or members, whether in cash or in other property, out of its earnings or profits accumulated since February 28, 1913, except a distribution made by a personal service corporation out of earnings or profits accumulated since December 31, 1917, and prior to January 1, 1922.

"(b) For the purposes of this Act every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913; but any earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed. If any such tax-free distribution has been made the distributee shall not be allowed as a deduction from gross income any loss sustained from the sale or other disposition of his stock or shares unless, and then only to the extent that, the basis provided in section 202 exceeds the sum of (1) the amount realized from the sale or other disposition of such stock or shares, and (2) the aggregate amount of such distributions received by him thereon.

to be regarded primarily as a sale of stock, although it has some such characteristics. It is more than a sale; it is primarily a liquidating distribution, and the sale, if it be such, is but an incident to the transaction. We think it was clearly the intention of Congress that section 201, supra, should apply to such transactions. Can it be said that a corporation desiring to liquidate may be permitted to characterize such a transaction as a sale rather than a liquidating dividend, in order to avoid a higher rate of taxation? This would defeat the very purpose for which the statute was enacted, and we think it cannot be done, under the ruling of Lucas v. Earl, supra.

■ In the instant case we think it is clear that the stockholders intended to liquidate, and the mere fact that the company first purchased and cancelled all the stock ex-cept 300 shares, which were owned by Mr. Phelps, is not sufficient under all the circumstances to constitute the transaction one of purchase and sale for the purposes of taxation under section 202, supra. Of course, a corporation may purchase its own stock under the Illinois statute, but such statutes are not ultimately decisive in federal income tax matters. Burk-Waggoner Ass'n v. Hopkins, 269 U. S. 110, 46 S. Ct. 48, 70 L. Ed. 183; Rosenberger v. McCaughn (C. C. A.) 25 F.(2d) 699; California Iron Yards Co. v. Commissioner (C. C. A.) 47 F.(2d) 514.

■ It is quite probable, as petitioners suggest, that the sale of stock to a corporation by one shareholder would be considered as a sale rather than as a liquidating dividend, for the act of one of several stockholders could not well be considered as evidence of an intention of all the stockholders; but in the instant case the Board evidently considered the concerted action of all the directors and stockholders in the disposition of practically all the stock as probative of intention of the company to liquidate, and we think the Board was right in so considering it.

The intention of the parties weighs heavily in determining the nature of such a transaction, and this intention may be fairly arrived at in the instant case by the acts of the parties. On December 27, 1922, the determination to act was first expressed, and it was made of record by resolution. It authorized the president to purchase for the company such amounts of the company's capital stock and at such prices—not to exceed $130 a share—as he might deem fit. Within four days from that date he bought and paid for all the stock, except 300 shares of his own, and at the highest price authorized. Within less than two weeks from the date of the resolution the board of directors had authorized a reduction of the capital stock to 300 shares, all of which were owned by Mr. Phelps. The entire transaction was remarkable for its celerity and lack of discord, and impels the conclusion that it was a voluntary distribution by the stockholders of all the assets of the company. The fact that Mr. Phelps received money for part of his stock and retained the remaining outstanding stock cannot militate against such conclusion. He was thereby, in effect, the owner of the undisposed of assets of the corporation, which consisted only of the Jefferson street property. Technically, as between the stockhold-

"(c) Any distribution (whether in cash or other property) made by a corporation to its shareholders or members otherwise than out of (1) earnings or profits accumulated since February 28, 1913, or (2) earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, shall be applied against and reduce the basis provided in section 202 for the purpose of ascertaining the gain derived or the loss sustained from the sale or other disposition of the stock or shares by the distributee.

"(d) A stock dividend shall not be subject to tax but if after the distribution of any such dividend the corporation proceeds to cancel or redeem its stock at such time and in such manner as to make the distribution and cancellation or redemption essentially equivalent to the distribution of a taxable dividend, the amount received in redemption or cancellation of the stock shall be treated as a taxable dividend to the extent of the earnings or profits accumulated by such corporation after February 28, 1913."

"Sec. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property; except that—* * *

"(3) In the case of such property, acquired by bequest, devise, or inheritance, the basis shall be the fair market price or value of such property at the time of such acquisition. The provisions of this paragraph shall apply to the acquisition of such property interests as are specified in subdivision (c) or (e) of section 402.

"(b) The basis for ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, acquired before March 1, 1913, shall be the same as that provided by subdivision (a); but—

"(1) If its fair market price or value as of March 1, 1913, is in excess of such basis, the gain to be included in the gross income shall be the excess of the amount realized therefor over such fair market price or value;

"(2) If its fair market price or value as of March 1, 1913, is lower than such basis, the deductible loss is the excess of the fair market price or value as of March 1, 1913, over the amount realized therefor; and

"(3) If the amount realized therefor is more than such basis but not more than its fair market price or value as of March 1, 1913, or less than such basis but not less than such fair market price or value, no gain shall be included in and no loss deducted from the gross income."

ers and the corporation, it was not a complete liquidation in the sense that all the assets had been converted into cash and distributed; but as between the stockholders themselves, for all practical purposes, there was in effect a complete distribution, which was evidently made by agreement of the parties and one which they were fully authorized to make. Breslin v. Fries-Breslin Co., 70 N. J. Law, 274, 58 A. 313; Joseph Goodnow & Co. v. Commissioner, 5 B. T. A. 1154; F. G. Lamb v. Commissioner, 14 B. T. A. 814.

That Mr. Phelps thought the transaction was in fact a liquidation distribution cannot well be doubted, for in the company's income tax return for the year 1922 he stated that the company was then in process of liquidation; and in the company's return for 1924 he stated that it was not engaged in business in the preceding year.

Petitioners contend that the decision of the Board is inconsistent with its former decisions to the effect that the tax must be based upon the transaction which in fact occurred, and not upon a transaction which might have happened and did not. In other words, they contend that the Board should have accepted the appellation which the resolution gave to the transaction. We think there is no inconsistency. In Appeal of Harkness, 1 B. T. A. 127, petitioner sought to have profits on her stock classified as dividends. By her own agreement she was to have no dividends in a certain corporation until she had sold her stock in another, which she had not done. Her stock in the first company became more valuable, however, by the accretion of undivided profits, and upon the sale of such stock the Board classified the earnings as gain and not dividends, because she still retained her stock in the other company. In Regal Shoe Company, 1 B. T. A. 896, petitioner besought the Board to hold that ownership of capital stock was an indirect ownership of corporation assets, which of course could not be done. In Filer v. Commissioner, 14 B. T. A. 1084, petitioner, as an investor, exchanged stock in one corporation for stock in another, pursuant to a contract to that effect, and the Board held that the transaction was not a liquidating dividend but was an exchange of one investment for another of like kind, and was therefore taxable under a different statute from the one governing liquidating dividends. In Brackett v. Commissioner, 19 B. T. A. 1154, pe-

titioner received a check from a newly organized corporation for certain stock which he owned in another corporation. With this check he purchased stock in the new corporation, and asked the Board to construe the transaction as an exchange of stock. The Board held the transaction to be a sale and purchase of stock and not an exchange. In Remington-Rand v. Commissioner (C. C. A.) 33 F.(2d) 77, petitioner requested the court to construe accumulated earnings as dividends when dividends had not been declared, and the court refused to do so.

In each of the above cases the Board and the court, respectively, classified the transaction before it according to the facts presented, and we think rightly so. Of course the facts in each case are different, and each case must be governed by its own facts. It may be said, however, that the cases cited by petitioners herein support the rule that it is the duty of both the Board and the court to classify such transactions consistently with the facts presented. It will be observed that in the cases just discussed there was no effort on the part of any petitioner to give any particular name to the transaction until the hearing was had before the Commissioner. In the instant case the order of procedure is somewhat changed, in that petitioner had given a name to the transaction before the issue was formed. But names mean nothing unless they are supported by the facts.

Petitioners further contend that the Board, without authority of law, disposed of the earnings prior to March 1, 1913, and subsequently to February 28, 1913, under section 201, and invoked section 202 in the disposition of the other assets distributed. We think this is not the case. The Board considered the entire amount received by the stockholders as a distribution and separated it into three parts, as contemplated by section 201 (c). In this we find no inconsistency.

The Board in determining the deficiencies followed decisions in Darrow v. Commissioner, 8 B. T. A. 276, Gates v. Commissioner, 9 B. T. A. 1133, and McCaughn v. McCahan (C. C. A.) 39 F.(2d) 3, and we think its determinations are correct. We think the fact that in each of the last-named cases the stock was not transferred can make no material difference in view of the broad terms of section 201.

The orders of the Board of Tax Appeals are affirmed.