KOPPERS COMPANY, ALLEGED TRANSFEREE, KOPPERS PRODUCTS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108538. Promulgated June 17, 1943.

*John E. McClure, Esq., O. H. Chmillon, Esq.,* and *E. L. Updike, Esq.,* for the petitioner.

*Wm. A. Schmitt, Esq.,* for the respondent.

OPINION.

Leech, *Judge:* Petitioner admits that it is a transferee of the Koppers Products Co. and liable as such for any tax deficiency of that company. It denies, however, that there is any deficiency. The de-

ficiency results from respondent's treating the transaction, under which petitioner acquired certain bonds of its subsidiary at a price below par in the open market and then brought about their redemption by the subsidiary, as in reality a transaction of the subsidiary and the gain accruing as taxable to it.

In the notice of deficiency respondent makes no mention of any specific statutory provision upon which his action was predicated. At the hearing and upon brief his counsel takes the position that this action was authorized by section 45 of the Revenue Act of 1934.[1] It is argued that the facts here show that the petitioner has dealt with its controlled subsidiary in a way which constitutes a so-called "milking" of the controlled corporation to the extent of a profit which it could not have obtained in a transaction at arm's length with a corporation not so controlled.

The parties appear to be in agreement as to the purpose and effect of section 45. *supra*. Respondent on brief calls attention to Senate Report No. 960, 70th Cong., 1st sess., explaining the purpose of the section as follows:

Section 45 is based upon section 240 (f) of the 1926 Act, broadened considerably in order to afford adequate protection to the Government. The section of the new bill provides that the Commissioner may, in the case of two or more trades or businesses owned or controlled by the same interests, apportion, allocate, or distribute the income or deductions between or among them, in such manner as may be necessary in order to prevent evasion (by the shifting of profits, the making of fictitious sales, and other methods frequently adopted for the purpose of "milking"), and in order to arrive at their true tax liability.

The question to resolve, therefore, is whether the petitioner has in fact here brought about the evasion of tax by its subsidiary by causing a transaction, actually that of the subsidiary, to be carried out in petitioner's name and the profit thereon to be reflected as realized by it. Respondent contends for the affirmative. He argues that there has been a "shifting of the profits" to petitioner through a "fictitious sale" and that the situation is, in its essence, the same as that revealed in *Asiatic Petroleum, Ltd.*, 31 B. T. A. 1152; affd.. *Asiatic Petroleum Co., Ltd.* v. *Commissioner*. 79 Fed. (2d) 234; certiorari denied, 296 U. S. 645; rehearing denied, 296 U. S. 664; *Pennsylvania Indemnity Co.*, 30 B. T. A. 413; affirmed, *per curiam*, 77 Fed. (2d) 92; and *Majestic Securities Corporation*. 42 B. T. A. 698; affd.. 120 Fed. (2d) 12.

We can not agree. In the *Asiatic Petroleum* case, *supra*, the taxpayer owned a certain block of stock which had increased in value

---

[1] SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such organizations. trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

some $3,000.000 over its cost, and had negotiated a sale at a figure realizing this gain. In order to evade the tax upon this profit the conveyance was not made direct to the purchaser but to a controlled foreign subsidiary for the amount of the cost of the stock to the parent. The parent then caused the subsidiary to convey the stock to the ultimate purchaser for the real consideration and the gain was by this device shifted to the subsidiary. In the *Pennsylvania Indemnity* case the taxpayer caused certain of its controlled subsidiaries to convey to it. at their original cost. certain securities which had in fact depreciated greatly in market value. The taxpayer parent then sold these securities at market and sought to deduct the "loss" registered to it on the face of the transaction. A substantially similar transaction was presented in the *Majestic Securities* case. In these three cases upon which respondent relies the respective sales were to or by the controlled corporation and were each manifestly fictitious. This was there clearly demonstrated by the fact that the value of the consideration paid had no relation to the market value of the property involved but was an arbitrary amount fixed for the specific purpose of establishing for tax purposes a gain or loss or a false and fictitious basis for computing gain on resale. No such sales would have been made to outside interests.

Here the character of the deal is not unusual and could as probably have occurred with a stranger. It is true that the taxpayer here was a controlled corporation. Nothing, however, was taken from it or conveyed to it over and above what would have passed between petitioner and an uncontrolled corporation in a similar transaction.

Here the taxpayer three years before had defaulted on its bonds and had been forced to obtain an extension agreement from the bondholders which precluded it from paying dividends while the bonds were outstanding. The existence of this condition subsequent to the improvement in its earnings which, except for this restriction, made possible the payment of dividends to its stockholder. the petitioner, was annoying to the latter. Because of that and other factors, not here involved, the liquidation of the taxpayer by petitioner became desirable. At this time the taxpayer had outstanding in the hands of the public a large amount in bonds. A primary requisite in its liquidation would be the redemption of these bonds. On the call for their redemption the taxpayer would be required to pay the bondholders 102 plus accrued interest, which interest included an amount for 1933 on which payment had been deferred under the extension agreement. The bonds were selling slightly below par, but it is agreed by both parties that the taxpayer lacked both the necessary funds and credit to purchase its bonds. The petitioner, however, had sufficient credit to obtain such funds. It did so and purchased bonds from the public for a total amount of $5,163,507.18. This was a purchase which

petitioner had a perfect right to make. It used its own funds for the purchase. It bought the bonds on the market for itself. Thereupon, as owner of the taxpayer's bonds, it was entitled to all the rights of a bondholder, and those rights were not reduced by reason of the fact that it was also the owner of petitioner's stock.

Then followed the transaction under which these bonds were redeemed by the taxpayer and which respondent asserts resulted in a shifting of profits and was "fictitious." We find, however, nothing fictitious in the transaction. It was the same transaction, in so far as the consideration paid by the taxpayer for the redemption, as it would have been had it been carried out by the taxpayer with the public owners of the bonds prior to their acquisition by petitioner. The taxpayer was required to pay nothing more nor less than the owner of the bonds was entitled to receive, under the terms of the bond indenture. The consideration was not affected by the fact that the obligor on the bonds was a controlled corporation. The amount payable by the taxpayer upon redemption of the bonds was $5,716,781.25. This amount was paid to and received by the petitioner since it had purchased the bonds and was the then owner thereof. The excess of this payment over its cost of the bonds petitioner reported as income realized by it. The fact that petitioner sustained losses in the same taxable year in excess of this amount and thus no tax liability resulted, has no bearing on the only pertinent question, which is whether the income derived from the transaction was that of petitioner or its subsidiary. Cf. *Crossett Western Co.* v. *Commissioner*, 73 Fed. (2d) 307; *Starr Piano Co.*, 26 B. T. A. 835; *Herald News Co.*, 26 B. T. A. 688; *Drawoh, Inc.*, 28 B. T. A. 666; *General Industries Corporation*, 35 B. T. A. 615; *Connery Coal & Investment Co.* v. *Commissioner*, 84 Fed. (2d) 485.

Respondent's counsel, on brief, makes the rather naive argument that petitioner, after it obtained the necessary funds for purchase of the taxpayer's bonds on the market, could have loaned these funds to the taxpayer and allowed it to purchase its bonds direct. This is true, and had it voluntarily done so and been content to accept insufficient security for the loan, the taxpayer would have had an increased tax liability as a result in the exact amount of the deficiency here determined. The answer, however, to this argument is that petitioner did not do this. It was free to and did use its funds for its own purposes. It was under no obligation to so arrange its affairs and those of its subsidiary as to result in a maximum tax burden. On the other hand, it had a clear right by such a real transaction to reduce that burden. *Helvering* v. *Gregory*, 293 U. S. 465; *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14; *Commissioner* v. *Gilmore Estate*, 130 Fed. (2d) 791; *Coca-Cola Co.* v. *United States*, 47 Fed. Supp. 109; *Commissioner* v. *Kolb*, 100 Fed. (2d) 920.

The action of respondent in treating the transaction involved here as, in fact, that of the taxpayer, on which a gain to it was computed. and his disallowance of the deductions of the taxpayer for accrued interest and bond premium paid petitioner on the redemption of the bonds, were erroneous.

*Decision will be entered for the petitioner*