Ames Theatre Company v. Commissioner.
Ames Theatre Co. v. Commissioner
Docket No. 4899.
United States Tax Court
1946 Tax Ct. Memo LEXIS 281; 5 T.C.M. (CCH) 44; T.C.M. (RIA) 46016; January 22, 1946
Marion Hirschburg, Esq., for the petitioner. Loyal E. Keir, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax of this petitioner for 1941 in the amount of $2,384.06. The only issue remaining for consideration is whether the Commissioner erred in refusing to recognize the existence of the Ames Operating Company, a partnership, and in allocating the income of that company to the petitioner. Findings of Fact The petitioner, a corporation, has its principal office at Des Moines, Iowa. It filed its return for the year in question with the collector for the district of Iowa. The petitioner is the owner of two theater buildings, has long-term leases on two others and owns the equipment in all four of the theaters. The theaters *282 are located in Ames, Iowa. The petitioner has 200 shares of stock outstanding which are owned as follows: Joe V. Gerbrach
100 shares
H. M. Warren
50 shares
Myron Trust
25 shares
Raymond Trust
24 shares
A. H. Blank
1 share Raymond and Myron Blank, sons of A. H. Blank, are the primary beneficiaries of the two trusts. The petitioner was engaged in the business of operating four theaters under the management of Gerbrach who lived in Ames. He was also one of the four directors, the other three of whom resided in Des Moines. All corporate matters of importance were presented to the Board for decision. Meetings of the Board were held frequently. Gerbrach and his wife had been divorced prior to 1940. One of their difficulties was that his wife wanted to live on the West Coast while his business kept him in Ames. They were remarried in 1940 and Gerbrach planned to establish a residence in California where he would be for a large part of his time. The directors realized that he would be unable to attend their meetings, and it was concluded that thereafter the operation of the theaters could be carried on better by a partnership than by the petitioner since any partner *283 could act after conference with his associates, by telephone or other means and the necessity of Board meetings and formal corporate action in regard to operational questions would be avoided. They also realized there would be some saving in taxes from the proposed change. Another purpose of the change was to fix rentals for each of the theaters which might be used as a basis for negotiation in the event that later one or more of the theaters might be leased to strangers. Gerbrach, Warren and two trusts, known as the Raymond Blank "A" Trust and the Myron Blank "A" Trust, entered into an agreement on or about June 28, 1941 for the formation of a partnership known as "Ames Operating Company". The trusts were different from those owning stock of the petitioner. Capital paid in by the partners and the partnership interests received therefor were as follows: Joe V. Gerbrach
$2,500 for 50 % interest
H. M. Warren
1,250 for 25 % interest
Raymond Blank "A" Tr.
625 for 12.5% interest
Myron Blank "A" Tr.
625 for 12.5% interest
The agreement provided that Gerbrach was to be the manager of the company at a salary of $125 a week. The petitioner entered into leases on *284 June 28, 1941 with the Ames Operating Company whereby the petitioner leased the two buildings and the equipment of the four theaters, as well as subleased the other two buildings to the partnership, each for a term of one year beginning June 29, 1941. The gross monthly rental for the four properties was $2,416.66. The petitioner, after June 28, 1941, continued to function in all respects as before except that its operations were restricted to those of a landlord. Its operations were at all times separate and distinct from those of the Ames Operating Company. It maintained a separate bank account and separate books and records. The Ames Operating Company, after June 28, 1941, took over all of the employees of the petitioner, operated the theaters, maintained separate books of account, filed partnership tax returns as required, paid monthly rentals to the petitioner pursuant to the lease agreements, and functioned in all respects as a separate and independent business organization. Gerbrach served as manager of the partnership. His brother managed the theaters while Gerbrach was absent in the latter part of 1940. He and his wife did not get along, and after several trips to California *285 he gave up his idea of residing there. The Commissioner explained his action in allocating the income of the Ames Operating Company to the petitioner as follows: It is held that the income from the business conducted under the trade name of Ames Operating Company is taxable to you in its entirety. Your contention that the income from the foregoing source represents partnership income taxable to the alleged members of an alleged partnership is denied. It is further held there was not such a bona fide partnership relationship as would permit the income to be excluded from your taxable income and taxed to the alleged members as partnership income. In any event, it is held that this amount of income, realized from the business conducted under the trade name of Ames Operating Company, is allocable to you under the provisions of Section 45 of the Internal Revenue Code. A stipulation of facts, together with a number of exhibits, has been filed by the parties and is incorporated herein by this reference. Opinion MURDOCK, Judge: The Commissioner has abandoned that part of his argument which was predicated upon section 45, I.R.C. His argument *286 in effect is that "the entire process of forming the alleged partnership and executing a lease thereto of petitioner's assets was a matter of form only, and that such process lacked business purpose." He contends that the petitioner did not relinquish legal title to its assets, no material change was effected in the conduct of the business, and what was done was only to satisfy formal requirements and was totally lacking in substance. He relies upon Higgins v. Smith, 308 U.S. 473, in which the Supreme Court said that the Government need not acquiesce in the taxpayer's election of the most advantageous form for doing business, if, upon looking at the realities, it appears that the method employed for doing business or carrying out a challenged tax event is unreal or a sham. Conversely, however, the Government may not require a taxpayer to adopt that form of doing business or carrying out a taxable transaction which is most advantageous to the Government. Moline Properties, Inc. v. Commissioner, 319 U.S. 436; Seminole Flavor Company, 4 T.C. 1215; Chisholm v. Commissioner, 79 Fed. (2d) 14, reversing 29 B.T.A. 1334, certiorari *287 denied 296 U.S. 641; Koppers Co., 2 T.C. 152; Briggs-Killian Co., 40 B.T.A. 895. The situation here is somewhat analogous to that in Seminole Flavor Company, supra. The petitioner, a corporation, was engaged mainly in manufacturing and distributing concentrates for soft drinks. The stockholders decided to divorce the manufacturing from the distributing functions of the business, and, for that purpose, formed a partnership which took over all phases of distribution, including advertising and servicing of distributors. The stockholders in that case deemed it sound, from a business standpoint, to make a change, although it seems apparent that the two operations, i.e., manufacturing and distributing, might well have been continued as separate departments of the petitioner's business. We held that the separate existence of the partnership should be recognized in that case just as the separate existence of individual, partnership, estate, and corporate enterprises was recognized in Briggs-Killian Co., supra; Nichols & Co. v. Secretary of Agriculture, (C.C.A., 1st Cir.), 131 Fed. (2d) 651; Ross v. Commissioner, (C.C.A., 5th Cir.), 129 Fed. (2d) 310, *288 reversing 43 B.T.A. 1155; Essex Broadcasters, Inc., 2 T.C. 523; Koppers Co., supra; Burnet v. Clark, 287 U.S. 410; Burnet v. Commonwealth Improvement Co., 287 U.S. 415; Interstate Transit Lines, 319 U.S. 590; Moline Properties, Inc., supra.The facts in this case require a similar result. No sham is involved in the proceeding. Both the petitioner and the partnership actively conducted separate businesses during the period involved and the transactions in question adequately meet the requirements of substance as well as form. There appears to be no reason whatever for refusing to recognize the existence of the partnership. Decision will be entered under Rule 50.