OPINION. Tyson, Judge: (1) In .determining petitioner’s taxable income for the period January 1 to November 30, 1941, the respondent increased its reported taxable income for that period by adding thereto $313,195.98, “profit on the contract, recorded on your [petitioner’s] books as deferred and not reported in your return.” The inclusion of the $313,195.98 is based upon the Commissioner’s determination that: * * * withdrawal of your [petitioner’s] joint participants in the contract constituted a completed transaction giving rise to a taxable gain to the extent that it was realized to the date of withdrawal. On brief, respondent states that “When the joint venture was closed a completed transaction occurred, giving rise to gain or loss to the parties in the venture at the time of the disposition of their interests therein.” The petitioner contends (1) that the amount was earned by it on a long term contract, i. e., a direct contract of petitioner with du Pont; (2) that such contract was not completed in the taxable period ended November 30, 1941; and that, consequently, petitioner, being on a completed contract basis, the amount did not constitute taxable income to it for that period. Petitioner also contends that the amount should not be included in its income for that period for the reasons that in making the arrangement with du Pont it was acting as agent for Forcum-James Construction Co., Pioneer Contracting Co., and Clark, Kearney & Stark, as principals, and that in making the arrangement with Forcum-James Construction Co., Pioneer Contracting Co., and Clark, Kearney & Stark, evidenced by its letter to the latter concern of October 7, 1940, it was also acting as agent for those parties as principals. If it could be said that the $313,195.98 was realized by petitioner from the direct contract between it and du Pont we should be unable to reach the conclusion, even if it were consequential, that such contract was a long term contract continuing for its performance beyond November 30, 1941. If such contract had its inception in purchase order No. SLC-2540, the record shows that order to have been entirely completed prior to November 30, 1941. If such contract had its inception in purchase order No. 48, the record shows nothing with reference thereto, except that it was issued to petitioner and the amount thereof was included in the total billings to du Pont. If such contract had its inception in purchase order SLC-331, we are unable to reach the conclusion that there was one long term contract continuing by reason of various so-called alteration orders for its performance beyond November 30, 1941, because: None of the orders was introduced in evidence and we are not informed of the provisions of purchase order SLC-331, except as to a portion thereof as set out in the excerpt therefrom shown in our findings and that the order was for the amount of $130,000 or $150,000, computed on certain work to be done on the unit price named in the bid; and we are not informed of the provisions of the various so-called alteration orders, except as to portions of two of them, as also shown by excerpts therefrom set out in our findings, and the statement of the secretary and treasurer of petitioner that “most of the alterations were for additional services requiring use or constructing certain items of which a unit price had not been submitted in the original bid.” Lacking more information than that stated, we are unable to determine, even if we could otherwise do so, what work performed after November 30,1941, was attributable to purchase order SLC-331 and the so-called alteration orders, It is true that C. B. Ford, secretary-treasurer of petitioner, after testifying that alteration orders Nos. 27 through 31 on SLC-331 were issued after November 30,1941, stated categorically that “this job — contract or project or whatever you want to call it,” was completed in May 1942, but such testimony obviously refers to the final completion of all undertakings of petitioner with du Pont, whether under one contract or several contracts, and in our opinion does not establish the existence of one long term, continuing contract which extended for its performance from a time prior to November 30, 1941, to a subsequent date. Inasmuch as we can not conclude that the $313,195.98 was realized by petitioner from a long term contract the performance of which extended beyond November 30, 1941, and inasmuch as that amount was carried on petitioner’s books on November 30, 1941, as deferred income resulting from performance of work involved in the Charles-town job, it would seem apparent that it was realized in the taxable period ended November 30, 1941, if it was realized as the result of a transaction closed in that period. Was it so realized? We think it is clear that it was realized as the result of such a transaction, for at the time of the settlements made with Clark, Kearney & Stark, Pioneer, and Forcum-James Construction Co., an enterprise or joint venture in which those parties were engaged with petitioner was terminated and as a result petitioner became entitled to the $313,195.98 income carried on its books as deferred income. See Frank Kell, 32 B. T. A. 21; affirmed on this point, 88 Fed. (2d) 453. Cf. Jud Plumbing & Heating, Inc., 5 T. C. 127; affd., 153 Fed. (2d) 681. No contention is made by petitioner that the amount did not represent profits; nor does the record so show. We, therefore, hold that the respondent did not err in including the $313,195.98 in petitioner’s income for the period ended November 30, 1941. And we think this is true even though petitioner was acting as agent of the other parties in carrying out the enterprise or joint venture. Petitioner seems to have recognized that income received by it from the enterprise or joint venture was income accrued to it for the period ended November 30, 1941, from a closed transaction, notwithstanding it was on the completed contract basis of reporting income, since it included in its income tax return for that period the $140,000 it admittedly received from that transaction. If it was proper to so include the $140,000, it would seem to be proper to also include the $313,195.98, since the latter amount was accrued on the same closed transaction as was the $140,000. We think that the contention of petitioner, that it acted merely as agent for the other three parties in making the contract with du Pont, is untenable, since the facts clearly show that the initial step of inviting bids was made to it; that petitioner took the next step by making the bid in its own name; that the purchase and alteration orders were issued directly to it in its own name and not as agent for any other party, or parties; that du Pont had no knowledge that petitioner was acting as agent for other parties; that du Pont looked to petitioner alone for performance of the work; and that petitioner knew that it alone was obligated to du Pont to perform the work. It may be that du Pont knew that other concerns would join in the performance of the work, but, so far as the record shows, it dealt with petitioner, and petitioner alone. It may be further stated that even if petitioner were so acting as agent for the other three concerns, income accrued to it in the amount of $313,195.98 at the termination of the joint venture and prior to January 30,1941, as is shown by its books reflecting that amount as deferred income. In passing, it may be noted that petitioner’s contention that it was acting as agent for the other parties in its transactions with du Pont is in direct conflict with its contention that the $313,195.98 was received on a long term contract of petitioner with du'Pont, since if petitioner so acted as agent such contract as it made with du Pont could not be a long term contract of its own. Petitioner makes the same contentions with regard to the $500,000 as it makes with regard to the $313,195.98; i. e., that the amount was realized on a long term contract and that petitioner was acting as agent for the other three concerns in making the contract with du Pont and in entering into the enterprise, or joint venture,, with the other three concerns. With regard to the $500,000, there is also no contention made by petitioner that that amount did not represent profits; nor does the record so show. The answer we have made to petitioner’s like contentions made with regard to the $313,195.98 applies with equal force to the $500,000. However, with regard to the $500,000 which was paid by it to the Forcum-James Construction Co. and was included in petitioner’s income by respondent under the authority of section 45 of the Internal Revenue Code,[1] the petitioner makes the further contention that that section does not apply so as to justify such inclusion. The amount was so included by respondent with the explanation in part as follows: “Included in the payments made to the joint participants was $500,000 to [Forcum-James Construction Co.] * * *. Under the authority of Section 45 of the Internal Revenue Code, gross income in the amount of $500,000 is allocated to and included in your taxable income. This allocation is necessary in order to clearly reflect your income and that of the partnership, Forcum-James Construction Company, owned and controlled by your active officers who also own, manage and control your business through ownership of your stock.” Did the $500,000 accrue to petitioner under the provisions of section 45, supra, as determined by the respondent? We think it did. The facts show that during the taxable period petitioner had equipment and that the partnership had none; that the partnership had no employees and that petitioner had 500 or 600 employees, which it is fair to assume were used by it in the performance of the work, since there is nothing in the record showing they were used on any other work; that the partnership had no offices as its own; that its books and records were kept by petitioner’s employees who were paid by petitioner ; that petitioner paid $18,000 per annum to each of four of its stockholders (who were also members of the partnership and three of whom were petitioner’s officers) for their services on the job and the partnership paid them nothing; that on its income tax return for 1941 the partnership included the $500,000 as income, but showed no deduction as expenses incurred in producing such income; and that on the income tax return of petitioner for the period ended November 30, 1941, it reported as its expenses for that period the amount of $1,539,831.62. From all these facts and circumstances it is obvious that the $500,000 was not earned through any work performed by the partnership, but, on the contrary, it is clearly indicated that the work was performed and the income earned by petitioner. Petitioner, however, contends that it was not entitled to the $500,-000, but that Forcum-James Construction Co. was a coadventurer so entitled. In support of this contention petitioner argues that the partnership’s place in the venture was substantial, because it was included therein by reason solely of its financial resources and was consequently the generating as well as the sustaining force in the performance of the contract. There is nothing in the record to show that any of the partnership’s resources were used in the venture, except that $57,562.19 was owed by petitioner to the partnership on September 7, 1940, the date of purchase order SLC-331 and, as testified to by C. B. Ford, such amount was “left” with petitioner in order to permit work on the project to begin. In the record there is a schedule attached to the partnership’s balance sheet as of December 31,1940, from which it appears that the balance of advances from the partnership to petitioner as of that date amounted to $19,406.83; and that during that year additional advances of $93,324.54 were made. In the record there is a similar schedule showing that $368,059.44 was advanced by the partnership to petitioner in 1941. There is no showing that any of the advances shown in the schedules were expended by the partnership on the enterprise, or joint venture, but it is clear that even if they were expended on that venture they were expended by petitioner and merely constituted loans to petitioner from the partnership; and none of them could be esteemed as constituting a contribution by the partnership to the venture entitling it to the $500,000 or any share in the profits of the venture as a coadventurer. All this is especially so when it is considered that the credit and resources of petitioner enabled it to borrow $500,000 from the Union Planters National Bank & Trust Co. during the period from November 15 to December 30, 1940, and that on December 30, 1940, it had repaid all the $57,562.19 and other advances made during that year, except $11,186.02, as shown on the schedule attached to the partnership’s balance sheet of December 31, 1940, and had on December 31, 1941, repaid all other advances made by the partnership except $32,775. From all these facts and the financial condition of petitioner as shown on its balance sheets, it would appear that petitioner was well able to furnish its own operating capital for the undertaking it made with du Pont on September 7,1940, as well as for the carrying out of the enterprise, or joint venture, terminated prior to November 30, 1941. There is a further requisite to the application of section 45; i. e., that the petitioner corporation and the partnership were “owned or controlled directly or indirectly by the same interests.” We think the facts clearly show that they were so controlled, since it is shown that at the end of 1940 the partnership was composed solely of Vern Forcum, W. E. Moore, C. B. Ford, and R. M. Ford, and it is not shown, within the test required by the income tax laws as applied by the courts, that during the taxable period ended November 30, 1941, there were others who had become members of the partnership. It is true that attached to the balance sheet of the partnership as of December 31, 1940, there was the statement, set out in our findings of fact, that two of the original partners had made gifts of partnership interests to other parties, effective as of midnight of that date, and it is also true that in the partnership’s return for the year 1941 those other parties, as well as others, were reported as having shares in the partnership. But this is a far cry from establishing that such other parties were partners, for income tax purposes, during the period in question, especially in view of the fact that the purported new members were apparently members of the families of the original four partners, or trustees for members of such families, as indicated by some of their names. That this indication accurately represents the situation is borne out by the argument of petitioner in its brief on the question of control, in which it is stated that the members purportedly added to the original partnership sustained relationship to the four original partners as follows: Mrs. Gladys Blankenship Ford, wife of C. B. Ford; Mrs. Madge Moultrie Moore, wife of Wade E. Moore; Charles F. Moore, trustee for the sons of C. B. Ford; Donald Forcum, son of Vern Forcum; and Harry Moultrie, trustee for the daughter of Wade E. Moore. So far then as the record shows, the partnership throughout the pertinent period was, for income tax purposes, composed solely of Vern Forcum, W. E. Moore, C. B. Ford, and R. M. Ford, and these persons also during that period owned 1,577 of the 2,500 outstanding shares of stock of petitioner and were directors of petitioner. Vern Forcum, W. E. Moore, and C. B. Ford were also, during that period, president, vice president, and secretary-treasurer, respectively, of petitioner. It is thus obvious that the same interests “controlled directly or indirectly” the petitioner corporation and the partnership within the intendment of section 45, sufra. Having concluded that the $500,000 was earned by petitioner rather than by the partnership of Forcum-James Construction Co. and that the same interests “controlled directly or indirectly” that company and petitioner, we hold that the respondent did not err in including the $500,000 in petitioner’s income for the period ended November 30, 1941. See Asiatic Petroleum Co. (Delaware) Ltd., 31 B. T. A. 1152; affd., 79 Fed. (2d) 234; certiorari denied, 296 U. S. 645; Birmingham Ice & Cold Storage Co. v. Davis, 112 Fed. (2d) 453; and National Securities Corporation v. Commissioner, 137 Fed. (2d) 600; certiorari denied, 320 U. S. 794. Petitioner cites Seminole Flavor Co., 4 T. C. 1215; Koppers Co., 2 T. C. 152; and Briggs-Killian Co., 40 B. T. A. 895, as cases in which section 45, supra, were held not to apply. The Seminole and Briggs-Killian Co. cases are distinguished on their facts, among other material respects, in that there the other party whose income was sought to be allocated to the taxpayer earned the income. Such is not the case here, since Forcum-James Construction Co., the partnership, performed no services (or, at least, none of material consequence) in earning the $500,000. The facts in the Koppers Co. case are so obviously inapposite as to require no recitation of points of difference between that case and the instant case. With regard to the third issue, presenting the question of res judi-cata, its suffices to say that there is no evidence in the record supporting, or tending to support, same, and the issue is consequently decided against the petitioner. The fourth issue involves the question of whether respondent erred in reducing petitioner’s invested capital by $6,681.37 for the purpose of determining its excess profits credit for the taxable period ended November 30,1941. Such issue grows out of respondent’s determination that the amount of $500,000 paid by petitioner during that taxable year to the partnership of Forcum-James Construction Co. constituted taxable income to petitioner from its Charlestown Ordnance contract; that such payment to the partnership constituted a dividend distribution to petitioner’s controlling stockholders doing business under the partnership name; that of the $500,000 distribution, earnings, and profits available for distribution totaled only $276,842.14 and the balance was a distribution not out of earnings for the taxable year; and that, on account of the latter, petitioner’s invested capital was reduced by $6,681.37. On this issue petitioner contends only that the $500,000 was not its taxable income and that it made no dividend distribution in the taxable year. We have heretofore sustained respondent’s inclusion of the amoimt of $500,000 in petitioner’s taxable income for the year involved and, in our opinion, petitioner’s payment in the taxable year of $500,000 of its own income to the partnership of Forcum-James Construction Co. constituted a preferential “dividend”[2] distribution to its four principal stockholders who, as far as this record shows, comprised the partnership during that year. The fact that such a dividend distribution is disproportionate and ignores the holders of a minority number of petitioner’s shares is not decisive. In Paramount-Richards Th. v. Commissioner, 153 Fed. (2d) 602, it was said: Corporate earnings may constitute a dividend notwithstanding that the formalities of a dividend declaration are not observed; that the distribution is not recorded on tile corporate books as such; that it is not in proportion to stock-holdings, or even that some of the stockholders do not participate in its benefits. Nothing in the statute or decisions warrants the view that a dividend distribution loses its character as such and becomes a deductible business expense [or cost of a contract] merely because stockholders (Vo not benefit equally from the distribution. Regensburg v. Commissioner, 2 Cir., 144 F. 2d 41; Chattanooga Savings Bank v. Brewer, 6 Cir., 17 F. 2d 79; Christopher v. Burnet, 60 App. D. C. 365, 55 F. 2d 527; Hadley v. Commissioner, 59 App. D. C. 139, 36 F. 2d 543; Phelps v. Commissioner, 7 Cir., 54 F. 2d 289. [Brackets supplied.] In view of the fact that the parties have stipulated to give effect, in the recomputation under Rule 50, to their agreement on several issues involving the method of computation, and since some of those issues involve excess profits tax, it is directed that our decision on this fourth issue (i. e., that petitioner paid a dividend of $500,000 in the taxable period) be given effect in the Rule 50 recomputation. On the fifth issue the respondent does not question the establishment of the pension plan and trust, nor that the contribution was made to such trust by the petitioner. Neither does he suggest that the officials of petitioner were not its employees. He argues that the pension plan was conceived and operated for the benefit of petitioner’s officials who were also stockholders, since if the $7,500 contributed to the trust for each of those officials were added to his annual salary of $18,000 in the same year in which the contribution was made to the trust, i. e., the taxable year, instead of being postponed to a subsequent year when the $7,500 would be paid out of the trust, each official would have little left after payment of taxes for the taxable year thereon; and that under the circumstances the petitioner is not entitled to the claimed deduction. Such argument is without merit. In this connection it may be pointed out that four other employees of petitioner, Estes, Liddell, Sander, and Stehle, each received substantially greater compensation, including therein their regular compensation and the contributions made for their benefit, than either of the four officials referred to. It may be further pointed out that, even with the addition of $7,500 to the regular compensation of each of two officials, the total thereof does not equal the regular compensation paid each of two other employees who were not officials or stockholders of petitioner. Also it may be noted that, although the contribution to each official was the same ($7,500), the number of shares in petitioner held by each was not the same, Forcum holdihg 559 shares, each of the Fords holding 400 shares, and Moore holding only 208 shares. Here it was impossible under the plan and trust instrument for the trust funds and earnings to be diverted or used for any purpose other than for the exclusive benefit of the employee participants under the plan, and we have found after careful consideration of all the facts of record that the compensation paid by petitioner to the employees enumerated in our findings, together with petitioner’s contributions to the pension trust, constituted reasonable compensation for services actually rendered by each of such employees, except as to Donald Forcum. As to the $1,500 contribution for Donald Forcum, who, in 1941, was about 21 years of age, the evidence fails to show that such amount should be included as a reasonable allowance for services actually rendered by him. C. B. Ford testified that “we possibly erred in including him for the amount we did.” We therefore hold that the amount of $72,500 contributed by petitioner to the pension trust, less $1,500 contribution for the benefit of Donald Forcum, is deductible by petitioner as a business expense under section 23 (a) (1) of the Internal Revenue Code; and this irrespective of the question as to whether that amount constituted a contribution under section 23 (p) to a pension trust described in section 165 of the code. Gisholt Machine Co., 4 T. C. 699 Phillips H. Lord, 1 T. C. 286. Lincoln Electric Co., 6 T. C. 37, relied upon by respondent, is distinguishable on its facts, among others being that here there was the equivalent of “in case of the death of any one of the beneficiaries of the trust before distribution to him of his share of the trust fund, payment would be made of his share to any beneficiary he might designate,” while there was no such provision, and lack of such provision was there stated on page 54 to constitute a “very significant difference” in distinguishing the Gisholt Machine Co. case. Among other distinguishing facts of the Lincoln Electric Co. case is that here the pension plan was communicated to the participants, while in that case it was not. With respect to the sixth issue, which is on the accountants’ fees of $12,500, the evidence is not very satisfactory. The only testimony on this issue was given by a member of the firm of accountants. He testified that he was generally familiar with the nature, scope, and extent of the services rendered; that the services had expanded rather substantially because of the expansion of petitioner’s business; that the cost to the firm of accounting personnel was increasing; that it was necessary to make provision for handling the records covering work in other states; that the firm did the customary work at regular, semiannual and annual periods required in connection with an enterprise of the size of petitioner; that the firm gave petitioner the benefit of the firm’s experience in modern systems; that during the period involved no new system was installed; and that the work was “all in the run of the mill, and current adjustments” in the company’s records. The exact nature, scope, and extent of the services were not detailed by the witness and the invoice covering those services was not presented in evidence. The witness further testified that Pioneer Contracting Co. and L. O. Brayton were clients of their office and that, although it was his impression that fees for services performed for them were not included in the amount of $12,500, he was not sure of it. Under all the facts and circumstances shown in the record, when considered in connection with the testimony of this witness showing an uncertainty as to whether the $12,500 covered services rendered to petitioner only, we conclude that the action of the respondent in disallowing $7,500 of the claimed deduction of $12,500 must be approved. Decision will he entered wider Bule 50. SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS. In any ease of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses. SEC. 115 [I. R. C., 1939]. DISTRIBÜTIONS BY CORPORATIONS. (a) Definition of Dividenii. — The term “dividend” * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 3 913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminución by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.