OPINION. Hill, Judge: We believe that respondent’s determination must be sustained in so far as he disallowed the increased deductions claimed by petitioner for interest paid. Petitioner based such increase upon a contract of June 29, 1942, by which it agreed with its creditor, whose stockholders were the same as petitioner’s, that payments previously made on principal should all be allocated to interest and prorated back over the years 1940,1941, and 1942, in the amounts shown in our findings. With respect to petitioner’s fiscal years ending June 30, 1940, and 1941, it paid interest at the rate of 1 per cent in the amounts of $87,016.29 in each year. Throughout 1940 and 1941 there was in effect the Cuban moratorium law limiting petitioner’s liability for interest payments to a maximum of 1 per cent. At the end of those years petitioner had made no attempt to waive the provisions of the law. It was not until June 29, 1942, that petitioner purported to waive its rights and pay interest at the contract rate. It does not contend and indeed we do not believe it could properly do so under the facts here, that its original method of deducting accrued interest for fiscal 1940 and 1941 was incorrect or improper under the taxing statute. The facts of Security Flour Mills Co. v. Commissioner, 321 U. S. 281, are parallel here. The Supreme Court in that case pointed out the rationale of the annual basis of returns of income and then added: This legal principle has often been stated and applied. The uniform result has been denial both to government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount. So here, assuming the validity of the contract of June 29,1942, of providing for the adjustment of interest payments, it is clear that the obligation to pay any increased interest over and above the 1 per cent limit provided by the laws of Cuba did not become fixed until June 29, 1942. Hence petitioner’s right to an increased deduction for interest, if it ever existed, did not become final for accrual purposes prior to June 29, 1942. In view of what the Supreme Court said in Security Flour Mills Co. v. Commissioner, supra, we do not believe that petitioner should be permitted to reopen its taxable years 1940 and 1941 for the purpose of adjusting interest deductions. We so hold. See Baltimore Transfer Co. of Baltimore City, 8 T. C. 1, 9. As to the claimed deduction for interest in the amount of $337,355.56 for the taxable year ended June 30,1942, we do not believe that under the facts here an obligation for the payment of such amount of interest arose from the purported contract of June 29,1942. As indicated in our findings, on May 28, 1942, petitioner made a payment of $430,000 to its creditor. At that time it was agreed that $343,913.02 of that amount was to be a payment on principal and the rest of the payment in the amount of $86,086.98 was to be for interest. Thereafter on June 29, 1942, the purported contract above mentioned was entered into. The contract admittedly was entered into solely to reduce petitioner’s income tax liability for the years in question. It is clearly shown by the language of the contract that it was motivated solely by a tax-saving scheme. It applied only to the fiscal years between July 1, 1939, and June 30, 1942. It is apparent that subsequent to that time there was to be a resumption of paying only at the rate of 1 per cent. There was no legitimate business purpose for the contract. The stock of petitioner and the creditor corporation were owned by the same people. The very nature of the contract indicates that it was not one that would have been entered into by parties negotiating at arm’s length. Petitioner received no consideration for consummating it. We believe that the contract, therefore, was nothing more than a sham, the type of which has been consistently rejected by the courts in determining Federal income tax liability. What we said in Granberg Equipment, Inc., 11 T. C. 704, 714, 715, is applicable here: Not only the steps leading to the execution of the agreement, but the agreement itself, demonstrates that all were incidents of an artificial maneuver to avoid taxes. Few provisions protecting petitioner’s interests were included, whereas an inordinately high minimum royalty was established. On its face it appears to be an agreement that parties dealing at arm’s length would not have formulated. “Surely, [the royalty] is not an ordinary and necessary business expense of carrying on petitioner’s trade or business. Except for the close relationship of the parties, it seems hardly conceivable that such an agreement would ever have been entered into.” Eskimo Pie Corporation, 4 T C. 669, 677; affd. (CCA-3), 153 Fed. (2d) 301. We have carefully examined the cases cited by the petitioner on this point and find that they are not applicable to the situation here. This brings us to respondent’s determination that petitioner’s deduction for interest for the fiscal year ended June 30, 1940, should be reduced from $87,016.29 to $6,198.40 for the reason that * * * the Transitory Provisions, effective June 4, 1940, cancelled interest prior to that date, hence, the only interest aecruable or deductible by the petitioner for the year ended June 30, 1940, was the interest at 1% from June 4 to June 30, 1940, namely, $6,198.40. * * * We do not agree with respondent’s interpretation of the decree law. Article 67 of Decree Law 412, set forth in our findings, provides that the tacit waiver of the benefits of that law should be presumed from the making of voluntary payments. We think that petitioner’s voluntary payment of $87,016.29 for the year 1940 did waive any rights it had under the various laws of Cuba. Therefore petitioner properly deducted the amount of $87,016.29 for interest in its fiscal year ended June 30,1940. Issue 2. The respondent has also disallowed for petitioner’s fiscal year ended June 30, 1942, $173,211.20 of a claimed deduction of $180,832.68, which was designated on petitioner’s books as a “Reserve to cover storage and shipping expenses of sugar.” The various items making up the claimed total of $180,832.68 are set forth in our findings. The respondent supports his determination by arguing that although petitioner had sold its entire sugar production by June 30, 1942, still not all of it had been shipped by that date and the sugar then on hand was shipped at various times during the following fiscal year. The respondent adds that since in connection with the sugar not shipped by June 30, 1942, the petitioner was required to keep the sugar in storage and incur other expenses including mending of bags, sampling, polarizing, and commissions, neither the liability nor the amount of such expenses was definite and fixed until after the close of the fiscal year 1942. We agree with respondent’s position. In Dixie Pine Products Co. v. Commissioner, 320 U. S. 516, the Supreme Court stated in part as follows: * * * It has long been held that, in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; * * *. Here, obviously since the storage and other charges could not have been incurred until a subsequent fiscal year, the fact of petitioner’s liability did not occur in fiscal 1942. We therefore hold that petitioner is entitled to deduct only the amount of $7,621.48 allowed by respondent in its year ended June 30, 1942. See Capital Warehouse Co., 9 T. C. 966. Issue 3. The petitioner, as indicated above, transferred its' assets and business to a Cuban corporation on November 14, 1942, under a plan of reorganization approved by the Commissioner in 1942 as one not motivated solely as a tax-saving device. See section 112 (i) of the Code. In its return filed for the fiscal year ended June 30, 1943, petitioner reported gross income of $52,531.37 and expenses of $311,182, which resulted in a reported net loss for fiscal 1943 of $258,650.63. Petitioner seeks to carry back such loss to the fiscal year 1942 as a net operating loss deduction. See sections 122 (b) (1) and 23 (s) of the Code. The respondent has determined that petitioner may not do so, stating “In order to clearly reflect petitioner’s net income for the fiscal year ended June 30, 1943, $300,000 of its deductions for expenses should be allocated to its successor corporation under the provisions of section 45 of the Internal Revenue Code.” We do not agree with the respondent’s determination. He points out that an independent taxpayer in the same position as petitioner would not have transferred its business at the very time when it was on the verge of reaping the income to which it was entitled by virtue of its expenditures without receiving some adequate consideration and that the selection of the date of the transfer was solely for tax purposes. So far as the adequate consideration argument is concerned respondent apparently ignores the fact that on November 14, 1942, there was an exchange of the property and business of petitioner for the assumption by the Cuban corporation of its debts plus its common and preferred stock. Respondent’s argument also fails to recognize that the transfer of property on the date in question was not motivated primarily by a tax-saving scheme; instead it was a transaction carried out because the officials of the petitioner felt that under a provision of the Constitution of Cuba its property could be expropriated. The petitioner did not know until July 17, 1942, that the transaction had the approval of the respondent for tax purposes. On that date the respondent stated in a letter that in his opinion the plan in question was not one having as its principal purpose the avoidance of Federal income taxes within the meaning of section 112 (i) of the Internal Revenue Code. Certainly, the lapse of time between that ruling of the respondent on July 17,1942, and the transfer of the property and the business to the Cuban corporation on November 14, 1942, was not unreasonable. We therefore think that what we said in Seminole Flavor Co., 4 T. C. 1215, 1235, is applicable here: Actually, the principal force behind all of the Commissioner’s argument is that the petitioner could as well have done all the things that the partnership did and reaped all of the earnings of the related enterprises. Since petitioner could have had the earnings, the Commissioner would make it so by exercising the authority conferred by section 45. The same type of argument was made in the Koppers case, supra, [2 T. C. 152] which rejected the argument in language equally apt to the present contention, due allowance being made for factual differences, * * *. We stated as follows in Koppers Co., 2 T. C. 152, 158: The answer, however, to this argument is that petitioner did not do this. It was free to and did use its funds for its own purposes. It was under no obligation to so arrange its affairs and those of its subsidiary as to result in a maximum tax burden. On the other hand it had a clear right by such a real transaction to reduce that burden. [Citing Helvering v. Gregory, 293 U. S. 465, and other cases.] We believe that under the circumstances of this case, where a sound reason not primarily related to tax saving was the motivating force of the transaction in question, the respondent should not be permitted, under the guise of section 45, to allocate certain of the expenses of the petitioner to the Cuban corporation. Miles Conley Co., 10 T. C. 754, 762, 763. The carry-back is therefore to be allowed. Petitioner also raised an issue which appears to be germane to all of the questions involved. In its brief in concluding its argument on this contention petitioner states: 2. And, unless the laws of the United States grant to petitioner the benefits claimed in the computation of net income subject to tax — the taxing powers of the United States may not legitimately be exercised against petitioner in the manner proposed. In its discussion leading to this conclusion petitioner, among other things, contends that it is not a “citizen” of the United States within the meaning of Article IV, Section 2, Clause 1 of the Constitution of the United States. Therefore, it adds, the United States renders no protection to petitioner with respect to the property it owns and/or the business carried on in the .Republic of Cuba for which it can ask a return in the form of taxes. The argument is vague and unconvincing. Perhaps this is the reason why the respondent failed to answer it on brief. Certainly the petitioner being incorporated under the laws of the State of New York and not falling within the class of exempt corporations provided for in the Code, can not claim that its income is not subject to tax. See sections 52, 54 (f), and 13 of the Code. And in deciding the issues involved here we have given to petitioner the benefits under the taxing statutes in accordance with what we believe to be a proper interpretation of the law. We therefore hold against petitioner on this contention. Decision will be entered under Rule 50.