UNITED STATES v. LYNCH.

LYNCH v. UNITED STATES.

No. 12814.

United States Court of Appeals Ninth Circuit.

Nov. 23, 1951.

Rehearing Denied Dec. 27, 1951.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Howard P. Locke and Virginia H. Adams, Sp. Assts. to Atty. Gen., for United States.

Velikanje & Velikanje, E. F. Velikanje, S. P. Velikanje and John S. Moore, Jr., all of Yakima, Wash., for Lynch.

Before MATHEWS, ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

We have for determination two appeals. In the first the United States of America, hereinafter referred to as the Government, is appellant, and P. J. Lynch is appellee. In the second P. J. Lynch is appellant, and the United States of America is appellee.

We first consider the appeal of the Government. It concerns the correctness of a determination made by the Commissioner of Internal Revenue, that the net proceeds of profits from the sale of apples, which the Washington Fruit and Produce Company, a corporation had attempted to distribute to its stockholders as a dividend in kind, was taxable to the corporation.

Lynch is one of several stockholders to whom a dividend in kind was issued by the Washington Fruit and Produce Company, a corporation, to which we hereinafter refer as the corporation. This dividend consisted of 21,977 boxes of apples. The corporation at that time had three stockholders and was engaged in the business of growing, handling, warehousing and marketing of fresh fruits and vegetables. The dividend in kind was declared February 28, 1944. The apples distributed as a dividend were on that date owned and held by the corporation in its warehouse. At the same meeting at which the dividend was declared, the shareholders agreed among themselves to pool the apples and entered into an agreement with the corporation to dispose of the apples and account to the shareholders for the net proceeds after deducting the costs of washing, packing and storing. During April 1944 the apples were sold and the proceeds distributed. Possession of the apples was retained by the corporation and the sale thereof accomplished without difficulty, the

state of the market being such that solicitation by the corporation for buyers was unnecessary. On April 29, 1944 the corporation was liquidated. The Commissioner held that the excess of the sale price of the apples above cost to the corporation was corporate income. The trial court found otherwise. We think its finding was clearly erroneous for the following reasons: The dividend was not, nor was it intended to be, a liquidating dividend made in the process of winding up corporate affairs. The trial court found the dividend to be an ordinary one, reported as ordinary income by the recipients. The corporation continued to engage in its normal business for a period of two months after the dividend declaration. We are, therefore, required to regard the dividend under consideration here as one declared by a going concern and, inasmuch as the corporation, among other things, was engaged in the business of selling apples the property distributed represented its inventory or stock in trade.[1]

■■ It is clear that the shareholders caused the dividend to be declared with the knowledge and expectation that the property distributed would be sold immediately. Furthermore, the simultaneously executed agreement with the corporation to do the selling manifested a purpose on the part of the shareholders to use the corporate agency as the vehicle to effectuate the sale of apples. The corporation was to sell the apples in the normal course of its business, in essentially the same manner, and it is fair to assume to the same persons to whom it would have sold had there been no dividend declared. Under these circumstances we fail to see a motive for the dividend other than to escape taxation. It is fundamental that, " * * * in construing words of a tax statute which describe commercial or industrial transactions we are to understand them to refer to

transactions entered upon for commercial or industrial purposes and not to include transactions entered upon for no other motive but to escape taxation."[2] The dividend in question was not the kind of a distribution contemplated by the statute, § 115(a) of the Internal Revenue Code, 26 U.S.C.A. § 115(a), and must be ignored for tax purposes.[3] Distribution of corporate inventory with the expectation of immediate sale by the shareholders pointedly suggests a transaction outside the range of normal commercially-motivated and justifiable corporate activity, yet we have here a stronger case, because the sale was to be made by utilizing the corporation's facilities in the ordinary course of its business; the shareholders did not engage in a separate and independent business in which the apples were to be used.[4] The shareholders, under the circumstances of this case, cannot avoid payment of the price Congress has decreed must be paid for use of the corporate entity.

In its opinion the trial court used language indicating its belief that the doctrine announced in Court Holding Co. v. C. I. R. 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 567, required a finding in the instant case that the sale was made by the shareholders. The Court Holding Company case, as well as the case of Cumberland Public Service Co. v. U. S., 338 U.S. 451, 70 S.Ct. 280, 282, 94 L.Ed. 251, dealt with liquidating dividends and not, as here, with a dividend in kind by a going concern. In the Cumberland case the Supreme Court points out that "The corporate tax is thus aimed primarily at the profits of a going concern." Hence, in determining the "factual category" in which the present transaction belongs the factor of the going concern is most important. In the instant case, at the time the transaction was planned and executed all concerned knew that no necessity existed for the corporation to engage in prior negotiations and solicitations for sale of

---

1. For a general discussion of dividends, see Raum, Dividends in Kind: Their tax aspects, 63 Harvard Law Review, 593 (1950).

2. C. I. R. v. Transport Trading & Terminal Corp., 2 Cir., 1949, 176 F.2d 570,

572, certiorari denied 338 U.S. 955, 70 S.Ct. 493, 94 L.Ed. 589.

3. See note 2.

4. Cf. Fairfield S.S. Corp. v. C. I. R., 2 Cir., 1946, 157 F.2d 321; certiorari denied 329 U.S. 774, 67 S.Ct. 193, 91 L.Ed. 665.

the apples because of available ready market. The record discloses that the corporation gave the shareholders most favored customer treatment by not charging a selling commission and, in addition, certain customary handling charges were not imposed. These circumstances constitute grounds for attributing the sale to the corporation.

We next consider the appeal of Lynch from the judgment dismissing his action against the United States of America for the recovery of tax payments made as the result of accruing storage accounts of the corporation.

During the existence of the corporation it followed the custom of reporting, for income tax purposes, the expenses of warehousing activities for the most part on the accrual basis. Storage income, however, was not reported until the goods were withdrawn from storage and bills had been rendered and paid. In prior years use of such a system of accounting had resulted in approximate matching of corporate expenses and revenues for the reason that in the ordinary course of business goods were stored for short terms and usually removed by June 30, the end of the corporation's taxable year. The last corporate tax return for the period which ended with the liquidation of the corporation reported no storage income for goods which had been stored for a period of months pursuant to a contract with an agency of the United States Government but had not then been removed. The Commissioner held that the storage charges under the Government contract should be accrued to the date of liquidation and reported as income.

We think the Commissioner acted within the limits of the discretion conferred upon him by 26 U.S.C.A. § 41, "* * * if the [taxpayer's accounting] method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income." Acceptance of the corporation's accounting method in prior years did not prevent the Commissioner from later exercising his statutory power within proper limits. The fundamental change in the corporation's circumstances, that is, its liquidation and consequent non-existence, prevented its accounting technique from achieving the rough matching of expenses and income previously attained.

We understand appellant to contend that the income in question is not that of the corporation. The answer is, that the corporation has performed the services which create the right to the income which brings into play the basic rule that income shall be taxed to him who earns it. Helvering v. Eubank, 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81. A corporate liquidation and transfer of assets cannot divert taxability of income already earned any more than does an assignment of such income. Cf. Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Helvering v. Eubank, supra. Appellant further argues that granting there was corporate income it should not be taxed to the corporation because of the peculiar circumstances of this case. However, "a taxpayer * * * cannot avoid taxes by the simple expedient of not completing its contracts; and where a corporation puts itself in such a position that it could never complete its contracts, it is in no position to insist that even if it had income it has no tax liability". Cf. Jud Plumbing & Heating, Inc. v. C. I. R., 5 Cir., 1946, 153 F.2d 681, 685. In the cited case a corporation, reporting on the completed contract method, was in effect placed on the accrual method for the tax period terminating with the corporate liquidation in order to more clearly reflect its income for the final period of its existence. Similarly, a corporate taxpayer on the cash method has been required to accrue certain income items in its final return in order to properly reflect income. Carter v. C. I. R., 9 T.C. 364, 1947. Here, the Commissioner seeks to impose no such drastic revision of accounting method on the corporation for, as has been noted, the corporation accrued expense items incident to the operation of its business. Consistency in the reporting of all items of income and expense is all that is asked of the taxpayer in this case. Appellant argues that inclusion of the storage income would

be a misapplication of the accrual method because eventual payment of the charges was subject to the contingency expressed in the contract that the corporation fully comply with all its terms. But the sole remaining act to be performed by the corporation at the time it was liquidated was to relinquish the stored goods at the time the Government decided to remove them from storage. Appellant's contention, if sustained, would prevent inclusion, as taxable, many familiar items of earned income such as interest or rent, hitherto deemed proper subjects of accrual, on the grounds that sometime in the future one of the parties to the agreement might breach its terms. The corporation had faithfully fulfilled its contractual obligations up to the time of liquidation. The amount of storage charges was readily ascertainable, and the asserted contingency to which the right to payment was subject was not of the nature or kind which precludes accrual of income. The amounts were properly included as corporate income for the period ending with the liquidation of the corporation.

The judgment against the United States of America awarding recovery of taxes paid is reversed and the judgment dismissing the action of appellant Lynch against the United States of America for the recovery of tax payments made as the result of accruing storage accounts of the corporation, is affirmed.