the statute of limitations runs "from the commission of *the last overt act* alleged to have caused damage." (emphasis added) 153 F.Supp. at 593. Thus, where the Complaint alleges a conspiracy still ongoing at the commencement of the action, the statute would be no bar under a strict application of this theory. Also distinguishable is the situation in which overt acts were alleged within the statutory period but had caused no new damage, and the last acts causing damage had occurred more than four years past. E. g. Garelick v. Goerlich's Inc., 323 F.2d 854 (6 Cir., 1963).

■ The Courts have resorted to a variety of metaphysical theories to deal with the conceptual complexities of an antitrust conspiracy in a sizeable industry. They are reviewed and disposed of to the satisfaction of this Court by the excellent and comprehensive opinion of Judge J. Skelly Wright in Delta Theaters, Inc. v. Paramount Pictures, 158 F.Supp. 644 (D.La.1958). I agree with Judge Wright that in the case of a continuing conspiracy, the plaintiff may recover for any damage which occurs within the period of limitations. See authorities cited in *Delta Theaters*, supra, 158 F.Supp at 649, n. 20, 21. But the thrust of this decision, as I understand it, is not that Schenley cannot plead and prove activities of the conspiracy prior to that period. It merely limits the damage for which Schenley seeks recovery to damages demonstrably arising within the 4 years prior to the Complaint. See Hanover Shoe Inc. v. United Shoe Machinery, 245 F.Supp. 258 (M.D.Pa., 1965); Streiffer v. Seafarers Sea Chest Corp., 162 F.Supp. 602 (E.D.La., 1958); but see Viking Theatre Corp. v. Warner Bros. Pictures, 264 F.Supp. 665 (E.D. Pa., 1967).

■ Finally, it should be noted that apart from the issue of damages, conspiratorial acts would be relevant to the determination of the prayer for injunctive relief, even though they took place more than four years ago. For all these reasons, the request to strike portions of the Complaint alleging acts more than four years prior to the filing of the Complaint is denied.

Let an appropriate Order be submitted, on notice to all parties.

**PETER PAN SEAFOODS, INC., a Washington corporation, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**No. 3233.**

United States District Court
W. D. Washington, S. D.

June 27, 1967.

Bryant R. Dunn, James Wm. Johnston, Graham, Dunn, Johnston & Rosenquist, Seattle, Wash., for plaintiffs.

Mitchell Rogovin, Asst. Atty. Gen., Jerome Fink, W. Forbes Ramsey, Attys., Dept. of Justice, Washington, D. C., Eugene G. Cushing, U. S. Atty., Charles W. Billinghurst, Asst. U. S. Atty., Tacoma, Wash., for defendants.

## MEMORANDUM DECISION

BOLDT, District Judge.

P. E. Harris Co., Inc., a Washington corporation, now named Peter Pan Seafoods, Inc., is referred to herein as "New Harris." New Harris is the successor to P. E. Harris Co., a liquidated corporation herein referred to as "Old Harris." The Ajax Company, a Washington corporation, is referred to as "Ajax."

In this action plaintiff seeks to recover income taxes and interest in the total amount of $286,886.26 which are alleged to have been erroneously assessed and collected by the Commissioner of Internal Revenue for the taxable years ended March 31, 1960 and March 31, 1961. The disputed transactions now before the court with respect to which the Commissioner made a determination of plaintiff's tax deficiency occurred during the tax year ended March 31, 1957.

Immediately before trial and after the pretrial order had been signed and entered, the government gave notice Section 269 of the Internal Revenue Code of 1954 would be relied on as an additional ground for denying the income tax refund claimed by New Harris. New Harris objected to consideration of Section 269 because it was not specified as a basis of defense in the pretrial order and not cited by the Commissioner in his notice of deficiency. Also, New Harris contends Section 269 is not applicable to the facts of this case.

Orderly judicial administration requires that final pretrial orders, agreed to by able counsel and approved by the court, should not be amended in essential particulars except to prevent manifest injustice. If this principle is

not adhered to, the purpose and function of modern procedural rules governing the course of civil litigation will be defeated. Rule 16, Federal Rules of Civil Procedure; 3 Moore's Federal Practice, Section 16.11. The binding effect of stipulations contained in the pretrial order is well recognized, Ringling Bros.-Barnum & Bailey Combined Shows v. Olvera, 119 F.2d 584, 586 (9th Cir. 1941), as is the effect of admissions and statements arrived at with the cooperation and assent of both parties and not objected to during trial. First Federal Savings & Loan Association v. United States, 295 F.2d 481 (9th Cir. 1961); Fowler v. Crown-Zellerbach Corporation, 163 F.2d 773 (9th Cir. 1947). Essentially, it is "inconsistent with the purpose of clarification and simplification of issues to place upon a party the burden of connecting subsequently discovered *facts* with allegations buried in the pretrial order. * * *" (emphasis added.) Walker v. West Coast Fast Freight, Inc., 233 F.2d 939, 942 (9th Cir. 1956).

 In the present case, the particular contention proposed to be added to those stated in the pretrial order would add only additional statutory authority for denying the New Harris claim and does not otherwise affect or bear upon any fact issue stated in the pretrial order or raised in the trial. No new theory of the case or fact issue would be presented for determination if applicability of Section 269 be considered. The controlling issue remains: whether or not New Harris has overpaid income tax in the particular claimed. United States v. Pfister, 205 F.2d 538 (8th Cir. 1953); Roybark v. United States, 104 F.Supp. 759 (1952), aff'd 218 F.2d 164 (9th Cir. 1954). New Harris must prove that the United States has money which belongs to it. Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932); Dysart v. United States, 340 F.2d 624, 169 Ct.Cl. 276 (1965). While the pretrial order specifies the contentions presented in a lawsuit, the contentions should be liberally construed to embrace all legal theories inherent in the issues stated therein. Century Refining Company v. Hall, 316 F.2d 15 (10th Cir. 1963). The citation of statutory authority, however belated, which does not affect preparation or presentation of evidence on fact issues ordinarily will not place an unfair or undue burden on the adverse party.

No evidence introduced during the trial was objected to by New Harris as not being within the issues raised in the pretrial order. Rule 15(b), Federal Rules of Civil Procedure. It is not indicated any admitted evidence is applicable only under Section 269. This case was tried nonjury and the court was aware of the provisions of Section 269 while considering the evidence and the arguments of counsel. New Harris was afforded ample opportunity to make whatever legal contentions relative to Section 269 it deemed valid and all contentions asserted have been fully reviewed and considered. In the circumstances, it is entirely appropriate that the court should consider and construe any statutory authority that may determine the validity of plaintiff's refund claim. It is questionable whether the court may properly ignore a congressional enactment, possibly applicable, even though not cited by either counsel but otherwise discovered.

The court is satisfied Section 269 should be enforced if applicable to the facts of the case. Other than inferences of fact drawn by the court from the entire record the facts below stated are largely admitted in the pretrial order.

On March 23, 1950 New Harris executed two mortgage notes in the total amount of $1,668,432 for the purchase of Old Harris then in the process of liquidation. The notes were transferred to the Seattle First National Bank as Trustee, which issued certificates of beneficial interest to the sixty-eight former stockholders of Old Harris as beneficiaries. On December 31, 1954 the maturity date of the smaller note and interest on both notes were extended by the Seattle bank.

During 1956 it appeared the mortgage notes of New Harris might be purchased at a substantial discount. Nick Bez, president and a major stockholder in New Harris, was interested in the acquisition of the two notes by New Harris. However, Bez was advised that acquisition by New Harris of its own indebtedness at a discount would result in the realization of taxable income in an amount equal to the discount. Bez concluded it would not be feasible for New Harris to acquire its two mortgage notes.

On May 21, 1956 Bez and G. Hamilton Beasley, another officer and stockholder in New Harris, caused Ajax to be organized for the purpose of attempting to purchase the New Harris mortgage notes. Bez and Beasley then solicited stockholders of New Harris for pro rata contributions and the large majority (85.44%) of New Harris stockholders committed themselves to the purchase of Ajax stock and five-year notes, in the total amount of $142,228.52.

Although clear control of New Harris was not held by any group or individual, no stockholder influential in New Harris, either by virtue of an executive office or because of substantial stock ownership, declined to participate in the formation of Ajax. Bez, personally and through his wholly owned corporation, Trans-Pacific Fishing and Packing, and its related interest in the partnership of Peninsula Packers, controlled the largest single amount of stock in both New Harris and Ajax. Beasley was president of Ajax and the largest individual stockholder in New Harris. He also was executive vice-president of West Coast Airlines of which Bez was president, and devoted his full time to the airline, New Harris and other enterprises in which Bez was interested.

On February 21, 1957 the aggregate purchase price paid by Ajax for the New Harris mortgage notes was $774,288. The total amount of the New Harris indebtedness was then $1,861,514, including accrued interest. The Bank of California loaned Ajax $642,000 and this amount was combined with the $142,228 raised by soliciting stockholders in New Harris; Ajax pledged the New Harris mortgage notes as security for the loan.

The Seattle First National Bank had previously refused to loan Ajax the additional amount necessary for the purchase of the New Harris notes without first receiving the personal guarantee of Bez. The Bank of California agreed to make the loan but conditioned it upon a promise by Bez that a substantial payment on the indebtedness would be made in the near future. On May 17, 1957 New Harris paid Ajax $66,737.38 as interest for the year ended March 31, 1957 and thereupon Ajax paid $60,000 to the Bank of California. On May 23, 1957 New Harris made a prepayment on the principal of the two mortgage notes to Ajax in the amount of $400,000; on the same day Ajax reduced its indebtedness to the Bank of California by $399,667. Thus, by May 23, 1957 and within three months and two days from the time it was incurred, Ajax had reduced its indebtedness to the Bank of California from $642,000 to $192,000 by utilizing funds supplied exclusively by New Harris and New Harris stockholders.

From the date of its incorporation until it acquired all New Harris stock on March 25, 1959, Ajax did not engage in any business activity other than to negotiate the purchase of the notes in question. During the same period Ajax had no assets other than the New Harris mortgage notes and a small amount of cash.

Two issues are presented for determination by the court: (1) whether in substance New Harris through the recited transactions, acquired its own indebtedness at a discount in its taxable year ended March 31, 1957 and thereby realized taxable income under Section 61(a)(12) of the Internal Revenue Code of 1954; and (2) whether Section 269 of the Internal Revenue Code of 1954 requires denial of the New Harris claim for refund.

Section 61(a)(12) specifically provides that gross income includes income realized from the discharge of in-

debtedness. The discount purchase by a taxpayer of the taxpayer's own indebtedness constitutes a discharge and, thus, the realization of income in the amount of the discount. United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L. Ed. 131 (1931). Section 269 provides that in some limited situations related to the acquisition of control of a corporation, certain deductions, credits or allowances "shall not be allowed" when "the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax * * *."

It is well settled "[t]he incidence of taxation depends upon the substance of a transaction" and a "transaction [in question] must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant." Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981 (1945); Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L. Ed. 596, 97 A.L.R. 1355 (1935). Unquestionably, taxpayers have the right to mold business transactions in such a manner as to minimize the incidence of taxation, for "[t]he legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted." Gregory v. Helvering, supra, p. 469, 55 S.Ct. p. 267. Also, "[i]t is for the trial court, upon consideration of an entire transaction, to determine the factual category in which a particular transaction belongs." United States v. Cumberland Public Service Co., 338 U.S. 451, 456, 70 S.Ct. 280, 283, 94 L. Ed. 251 (1950); United States v. McNair Realty Company, 298 F.2d 35 (9th Cir. 1961).

### Section 61(a) (12)

Under Section 61(a) (12), the government contends that the corporate entity of Ajax should be disregarded because its purchase of the New Harris notes was a sham transaction, entered into solely to escape taxation and "having no commercial or industrial purposes," relying upon United States v. Lynch, 192 F.2d 718 (9th Cir. 1951) and similar authority. See, e. g., Electrical Securities Corporation v. Commissioner of Internal Revenue, 92 F.2d 593 (2nd Cir. 1937); Bazley v. Commissioner of Internal Revenue, 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782, 173 A. L.R. 905 (1947). In *Lynch* there was no "motive" for the declared corporate dividend under consideration other than tax avoidance; there were no "commercial or industrial purposes" for the transaction. United States v. Lynch, supra, 192 F.2d p. 720, citing C. I. R. v. Transport Trading & Terminal Corporation, 176 F.2d 570, 572 (2nd Cir. 1949), cert. den. 338 U.S. 955, 70 S.Ct. 493, 94 L.Ed. 589 (1950).

In National Investors Corporation v. Hoey, 144 F.2d 466, 468 (2nd Cir. 1944), Judge Learned Hand pointed out:

"* * * to be a separate jural person for purposes of taxation, a corporation must engage in some industrial, commercial, or other activity besides avoiding taxation: in other words, that the term 'corporation' will be interpreted to mean a corporation which does some 'business' in the ordinary meaning; and that escaping taxation is not 'business' in the ordinary meaning."

The evidence shows and the court finds that, aside from conducting board meetings, issuing stock and other routine or formal procedures incident to corporate life, the only ordinary "business" activity engaged in by Ajax during the period in question was the negotiation and purchase of the New Harris indebtedness through arrangements made primarily by Bez. New Harris, as refund claimant, urges that the activity of Ajax in negotiating and purchasing the New Harris notes was, itself, such a business activity as to require recognition of the Ajax corporate entity for tax purposes under National Investors Corp. v. Hoey, supra, and by analogy to "holding companies of various types" having limited purposes for their existence. The tax ramifications of holding companies, not having been explored in briefs or argument, will not be discussed herein.

█ The evidence strongly supports the close relationship of stockholders between New Harris and Ajax as demonstrated by the government in its supplemental brief. The court finds New Harris has not disproven the fact of such a close relationship between it and Ajax. However, the fact of a close stockholder relationship between two corporations, in itself, does not require that the corporate activities of one be legally attributed to the other for purposes of taxation. See: *Koppers Company v. Commissioner*, 2 T. C. 152 (1943) [parent and wholly owned subsidiary]; cf. *D. Bruce Forrester v. Commissioner*, 4 T.C. 907 (1945) [husband and wife]. To hold otherwise would deny "the legal right [of the taxpayers] to conduct their business affairs through a medium of their own choice;" this is true even though the motive in choosing a particular business structure be to reduce taxes. *Twin Oaks Co. v. Commissioner of Internal Revenue*, 183 F.2d 385, 387, 24 A.L.R.2d 466 (9th Cir. 1950).

While under *Hoey* a corporation is required to do some business before substantive corporate existence can be recognized under federal taxing statutes, *Hoey* clearly distinguishes between purely tax avoidance activity and activity having commercial or industrial purposes, because "escaping taxation is not 'business' in the ordinary meaning." Although many narrow or limited activities, when undertaken for legitimate purposes, may be properly described as "business," the activity of tax avoidance is not judicially recognized in applying tax statutes to the facts of a particular case. Such transactions have no "commercial or industrial" purpose. *United States v. Lynch*, supra.

█ Under all the facts and circumstances shown by the evidence, the court finds and holds that tax avoidance was the primary, dominant and moving purpose for the formation of Ajax and for its single business activity in purchasing the New Harris indebtedness. Without the purpose of tax avoidance, formation of Ajax would not have occurred. Ajax was formed essentially for the purpose of doing for New Harris that which New Harris itself, due to income tax considerations, decided not to do, namely, acquire the New Harris mortgage notes at a discount. The court is unable to conclude, however, that under these circumstances tax avoidance was the sole motive, without any other motive however insignificant, for the formation and activity of Ajax. Compare: *United States v. Lynch*, supra, 192 F.2d p. 720.

Two purposes other than tax avoidance are urged by New Harris, as refund claimant, in justification of Ajax's business existence; these purposes are not contradicted by the government with direct evidence but depreciated "in the circumstances." First, New Harris points out that the discounted price of the New Harris notes presented an opportunity for speculative investment and profit. Bez testified during the trial that profit incentive prompted the formation of Ajax. Secondly, the potential threat posed by competitors interested in taking over New Harris by first acquiring its indebtedness would be avoided if the notes were secured in friendly hands. The government concedes that Bez was aware of the business threat posed by competitors of New Harris at the time Ajax was formed and that the discounted value of the New Harris mortgage notes represented an opportunity for tremendous financial gain."

Although nothing in the evidence negatives the existence of the two "business" purposes referred to, they are found by the court not to have had any significant or material motivating influence in causing the formation of Ajax and its purchase of the New Harris notes. At a minimum, the taxpayer has not sustained its burden of proof on this issue.

*Section 269*

In pertinent part, Section 269(a) provides that when any persons acquire, directly or indirectly, control of a corporation for the principal purpose of tax avoidance through the benefit of a credit, deduction, or other allowance which such persons would not otherwise enjoy, then such benefits "shall not be allowed."

Control is defined as fifty percent of the voting power or value of all stock in the acquired corporation. Section 269(b) authorizes the Secretary or his delegate to allocate or to allow, or both in part, a portion of an amount disallowed under 269(a) if such allowance does not result in tax avoidance.

■ The Commissioner did not purport to exercise his discretion under 269(b) or cite that subsection in his Notice of Deficiency. Neither the exercise of administrative discretion nor notice to the taxpayer is a prerequisite to the operative effect of Section 269(a). Section 269(a) expressly and mandatorily provides that, in the particular circumstances specified in the section, certain credits, deductions or allowances "shall not be allowed." As to any disallowance under 269(a) the next following subsection, 269(b), authorizes the exercise of discretion by the Commissioner within narrowly specified limits. The exercise of discretion by the Commissioner, however, is not a precondition to the initial operation and effect of Section 269(a). Compare: Maxwell Hardware Company v. Commissioner of Internal Revenue, 343 F.2d 713 (9th Cir. 1965); United States v. First Security Bank, 334 F.2d 120 (9th Cir. 1964); Commissioner of Internal Revenue v. Chelsea Products, Inc., 197 F.2d 620 (3rd Cir. 1952).

■ Plaintiff cites decisions involving Section 482 as being applicable in principle to 269(a). The two sections are wholly inapposite to each other in the critical particular of authority for the Commissioner to exercise discretion. Under Section 482 the Commissioner must first exercise his discretionary powers before the section becomes operative; whereas the contrary is true as to Section 269. Also, notice to the taxpayer is a prerequisite to reliance by the Commissioner upon Section 482 in order to provide an opportunity for the taxpayer to show the discretionary action was arbitrary or capricious. Maxwell Hardware v. Commissioner of Internal Revenue, supra; United States v. First Security

Bank, supra. Such notice is not a prerequisite to operative effect of 269(a). Allocation under Section 269(b) was not involved in the present case. Consequently there was no occasion or necessity for the Commissioner to specify an amount not related to tax avoidance in the notice of deficiency under 269(a). Contrast: Commissioner of Internal Revenue v. Chelsea Products, Inc. supra (construing Section 269(b)).

It is clear the court must consider and determine whether the mandatory effect of Section 269(a) is applicable to the facts pertaining to plaintiff's refund claim.

■ New Harris contends Section 269(a) is inapplicable to the present case because control of Ajax was vested in stockholders of Ajax and not in the New Harris corporation. The argument is without merit. It is not disputed that the effective and controlling stockholders in both corporations were identical. Section 269 expressly provides "any persons," as well as any corporation, may be subject to its terms. While one corporation is not deemed the owner of stock of another corporation which is owned by a stockholder of both corporations, absent the attribution rules of Section 318 which are inapplicable to this case, nevertheless, the individual stockholders of New Harris are *persons* who acquired control of Ajax and in this respect Section 269 applies.

■ New Harris further contends that no "deduction, credit, or other allowance" is involved in this case, in that the Commissioner is only seeking to increase the taxable income of New Harris for the taxable year ended March 31, 1957 by including a discharged New Harris indebtedness. The government correctly points out that it is the net operating loss carryover claimed by New Harris for its taxable years ended March 31, 1960 and March 31, 1961 which are the *deductions* being disputed here and for which New Harris is presently asserting its refund claim. New Harris recognizes the government's contention, but asserts that the net operating losses of New Har-

ris are not derived from any transaction involving Ajax and that such loss carry-overs are derived from different years. Obviously, New Harris itself must suffer losses without regard to Ajax before the carryover provisions apply. The amount of the carryover available to New Harris in a given year will be directly affected by the amount of income attributed to New Harris in earlier years, including the taxable year ended March 31, 1957 with which this case is concerned. The tax attributes of the formation and activity of Ajax directly affect these calculation of New Harris income for the period in question, and in turn determine the amount of carryover which New Harris is entitled to claim.

The court has found and held tax avoidance was the primary and moving purpose for the formation and activity of Ajax. In Hawaiian Trust Company v. United States, 291 F.2d 761 (9th Cir. 1961), in construing Section 129 of the Internal Revenue Code of 1939, a statute similar to Section 269 but having important differences concerning the application and exercise of discretion by the Commissioner, the court stated at pages 765–766:

"To sustain the disallowance [of net operating loss carryover claimed by a taxpayer] under Section 129 [of the Internal Revenue Code of 1939], it must appear that the 'principal purpose' of the acquisition of the stock * * * was 'evasion or avoidance' of the tax. * * * [T]o constitute the 'principal purpose' the tax avoidance purpose must exceed in importance any other purpose.

* * * 'Presence of the requisite purpose of tax evasion has been said to be chiefly an issue of fact.'"

In *Hawaiian Trust* it was a stipulated fact the taxpayer did not consider the tax aspects of the transaction in question until *after* the taxpayer's acquisition of the stock. The taxpayer in that case had a legitimate business purpose and no tax avoidance purpose prior to discovery of

beneficial tax consequences resulting from the transaction in question. The court has found the stockholders of New Harris who created Ajax had the primary and moving purpose of tax avoidance before and at the time Ajax was formed and throughout the subsequent note purchase negotiations conducted for Ajax. At all times their purpose of tax avoidance was dominant and far exceeded in significance any other motivation or business purpose.

Any investment potential of Ajax was inherently derived from and dependent upon the ultimate success of New Harris. Ajax had no other assets but the New Harris notes from which a profit could be expected during the period in question. Unless the notes were paid, Ajax could realize no profit on its investment. It may be assumed *arguendo* that the Ajax assets represented a "good investment" in the sense that New Harris might be expected to succeed in its fishing operations and from proceeds thereof fulfill the obligations represented by its notes. Even so, the Ajax "profit" would be minimal. Only to the extent that fifteen percent of the New Harris stockholders refused to contribute to the Ajax venture could the success of New Harris substantially or materially contribute real "profit" to the Ajax stockholders. Whatever was gained by Ajax would come from New Harris, the vast majority of whose stockholders held all the stock of Ajax.

The above discussed contentions and all considerations urged by plaintiff in support of its contention that Section 269 (a) is not applicable have been fully reviewed and found without merit.

Upon the facts found by the court plaintiff is precluded from recovering the tax refund it seeks in this action by the applicable law under either or both of Sections 61(a)(12) and 269(a) of the Internal Revenue Code of 1954.

At the convenience of counsel findings of fact, conclusions of law and a judgment in accordance with this decision may be presented for approval and entry.