SOUTHERN BANCORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4654–75.   Filed March 28, 1977.

*James William Lewis*, for the petitioner.
*Frank Simmons*, for the respondent.

OPINION

QUEALY, *Judge:* Respondent determined deficiencies in petitioner's Federal income taxes for the calendar years 1970 and 1971 in the amounts of $18,139.05 and $26,476.06, respectively.

The sole question for decision is whether the income resulting from the sale of U. S. Treasury notes distributed to the petitioner as a dividend in kind by Birmingham Trust National Bank (hereinafter sometimes referred to as Birmingham Trust), its subsidiary, is allocable to the subsidiary pursuant to section 482.[1]

All of the facts have been stipulated and are so found. The stipulation of facts together with exhibits attached thereto are incorporated herein by this reference.

The petitioner, Southern Bancorporation (formerly the Alabama Financial Group, Inc., formerly BTNB Corp.), is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at Birmingham, Ala. The petitioner filed consolidated Federal income tax returns with its subsidiary, Birmingham Trust National Bank, for the taxable years 1970 and 1971 with the Internal Revenue Service Center at Chamblee, Ga.

The deficiencies here involved as determined by the Commissioner are for income taxes for the calendar year ended December 31, 1970, in the amount of $18,139.05, all of which is in dispute, and income taxes for the calendar year ended December 31, 1971, in the amount of $26,476.06, all of which is in dispute.

At all times material herein the petitioner owned substantially all (99.75 percent) of the capital stock of Birmingham Trust, which was a "bank" as defined in section 581 of the Code.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.

Birmingham Trust acquired U. S. Treasury bonds and notes, hereinafter sometimes referred to as the notes, on the dates and in the amounts set forth below:

| Purchase date | Par value | Purchase date | Par value |
|---|---|---|---|
| May 5, 1970 | $1,210,000 | May 4, 1970 | $380,000 |
| May 5, 1970 | 310,000 | May 4, 1970 | 838,000 |
| May 5, 1970 | 353,000 | | |

The notes were transferred by Birmingham Trust to its parent, the petitioner herein, as dividends on the dates and in the amounts set forth below:

| Par value | Date transferred to petitioner | Amount of dividend (adjusted basis) |
|---|---|---|
| $1,210,000 | Nov. 30, 1970 | $1,110,175.00 |
| 310,000 | Feb. 15, 1971 | 284,425.00 |
| 353,000 | May 12, 1971 | 323,877.50 |
| 380,000 | Oct. 1, 1971 | 335,231.25 |
| 838,000 | Nov. 5, 1971 | 742,939.38 |

The notes received during 1970 and 1971 as dividends from Birmingham Trust were sold in the open market by the petitioner on the dates and for the selling prices and resulting profits, as set forth below:

| Date transferred to petitioner | Date sold by petitioner | Selling price | Profit |
|---|---|---|---|
| Nov. 30, 1970 | Dec. 1, 1970 | $1,198,656 | $88,481 |
| Total for 1970 | | | 88,481 |
| Feb. 15, 1971 | Feb. 17, 1971 | $312,906.25 | 28,481.25 |
| May 12, 1971 | May 20, 1971 | 349,249.38 | 25,371.88 |
| Oct. 1, 1971 | Oct. 1, 1971 | 366,937.50 | 31,706.25 |
| Nov. 5, 1971 | Nov. 15, 1971 | 821,501.88 | 78,562.50 |
| Total for 1971 | | | 164,121.88 |

During 1970, in addition to the dividends in the form of notes paid to the petitioner, Birmingham Trust paid cash dividends in the amounts of $1,221,120 to the petitioner and $2,880 to its remaining stockholders. During 1971, in addition to the dividends in the form of notes paid to the petitioner, Birmingham Trust paid cash dividends in the amount of $3,310 to its other stockholders.

The dividends paid by Birmingham Trust to the petitioner during 1970 and 1971 were paid at regular intervals shortly

before the petitioner's regular quarterly dividend dates, and the petitioner intended to sell the notes to acquire cash for (among others) the purpose of paying its regular quarterly dividends and paying its own operating expenses.

In causing Birmingham Trust to declare and distribute U. S. Treasury obligations as a dividend in kind, the petitioner was motivated, at least in part, by the tax savings which would result upon the sale of such obligations by petitioner.[2]

In his notice of deficiency, respondent seeks pursuant to section 482 to allocate to Birmingham Trust the gain realized by petitioner on the sale of the U. S. Treasury notes resulting in the realization by Birmingham Trust of ordinary income to the extent of such gain. On brief, respondent also seeks to invoke the doctrine of *Commissioner v. Court Holding* Co., 324 U.S. 331 (1945), as a basis for taxing such gain to Birmingham Trust.

The petitioner points out that the pleadings in this case, the stipulation of facts, and allegedly the negotiations between the parties were predicated on the understanding that the respondent relied solely on section 482. Under these circumstances, petitioner contends that the respondent is precluded from raising in his brief for the first time the question whether the income realized from the sale of the U. S. Treasury obligations is allocable to Birmingham Trust under the doctrine of *Commissioner v. Court Holding Co., supra.*

Petitioner's position is well taken. *Richard R. Riss, Sr.,* 57 T.C. 469 (1971); see also *Frentz v. Commissioner,* 375 F.2d 662 (6th Cir. 1967), affg. 44 T.C. 485 (1965). However, this does not preclude the Court from looking to the *Court Holding* Co. line of cases to determine whether there might be the possibility of "evasion of tax" which warrants invocation by the respondent of section 482.[3]

---

[2] Prior to the enactment of sec. 582 in the Tax Reform Act of 1969, Birmingham Trust was permitted under law to offset gains and losses on corporate and governmental evidences of indebtedness and if there was a net gain, it was treated as a capital gain, while if it was a net loss it was treated as an ordinary loss. Sec. 582 was enacted so that the gain realized on such evidences of indebtedness would, in the case of a banking institution, be taxable as ordinary income. H. Rept. No. 91–413 (Part 2) 99 (1969).

[3] SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not

Petitioner and Birmingham Trust are commonly controlled corporations within the meaning of section 482. Respondent seeks to allocate "gross income" between such corporations by shifting the gain realized on the sale of the U. S. Treasury obligations from petitioner to Birmingham Trust. In so doing, respondent has determined that such allocation is "necessary in order to prevent evasion of taxes or clearly to reflect the income" of such corporations. Whether the respondent properly made such determination is the only question remaining for decision.

The Court must thus consider whether, if the transaction is allowed to stand, there would be an evasion of taxes or distortion of income as between Birmingham Trust and the petitioner. If the result sought by respondent could have been achieved in reliance on the *Court Holding Co.* line of cases without resorting to section 482, all the prerequisites for the application of section 482 would likewise be met. Therefore, the Court cannot ignore the question whether the gain could have been taxed to Birmingham Trust without regard to section 482. The fact that there was a corporate dividend or distribution in kind of the property to be sold does not foreclose such inquiry. *Guinness v. United States*, 73 F. Supp. 119 (Ct. Cl. 1947).

To the question whether the transaction between petitioner and Birmingham Trust, its controlled corporation, resulted in the evasion of tax or the distortion of the income of Birmingham Trust, the answer must be in the affirmative. *Guinness v. United States, supra; United States v. Lynch,* 192 F.2d 718 (9th Cir. 1951), cert. denied 343 U.S. 934 (1952). While it might be noted that in *United States v. Lynch, supra,* the property distributed as a dividend was an inventoriable item, namely boxes of apples, the effect of section 582 is to place the U. S. Treasury obligations in the hands of Birmingham Trust in a similar category. As in the *Lynch* case, the declaration and nature of the dividend was controlled by the petitioner. There was a ready market for the

---

affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

U. S. Treasury obligations. In principle, the *Lynch* case cannot be distinguished.

The appreciation in the U. S. Treasury obligations was attributable to the purchase of such obligations by Birmingham Trust. It was the bank's money that was invested and produced the income. In fact, it may be assumed that Birmingham Trust paid its depositors for the use of that money. The corresponding income or gain was sought to be diverted to the petitioner prior to the sale of the obligations by the distribution of a dividend in kind. This clearly resulted in the distortion of the income of Birmingham Trust. Accordingly, there were present in this case the prerequisites for the application of section 482.

Petitioner argues that the application of section 482 should be limited to those transactions which had no business purpose, citing *Koppers Co.*, 2 T.C. 152 (1943). Admittedly, the payment of a dividend by Birmingham Trust to the petitioner had a business purpose, namely to provide the petitioner with the funds necessary to carry on its business. However, the form of the dividend chosen in this case was not an isolated incident, analogous to the distribution in *Koppers Co., supra*, but was a pattern of conduct directed by the petitioner in order to negate, if possible, the impact of section 582 on its subsidiary. The primary purpose in distributing the U. S. Treasury obligations as a dividend in kind was the avoidance of tax by Birmingham Trust. Respondent was fully justified in allocating the resulting income from the sale of such obligations to Birmingham Trust. *National Securities Corp. v. Commissioner*, 137 F.2d 600 (3d Cir. 1943), cert. denied 320 U.S. 794 (1943). See also *Northwestern National Bank of Minneapolis v. United States*, an unreported case (D.C. Minn. 1976, 37 AFTR 2d 76-1400, 76-1 USTC par. 9408).

*Decision will be entered for the respondent.*